UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

JOHN HARDNEY,

            Petitioner,

   v.

SULLIVAN, Warden,

            Respondent.

NO. CIV S-07-0574 JCC

ORDER

This matter comes before the Court on Petitioner John Hardney's petition for a writ of habeas corpus under 28 U.S.C. § 2254 (Dkt. No. 1); Respondent Warden William Sullivan's answer to the petition (Dkt. No. 10); and Petitioner's traverse to the answer (Dkt. No. 17). Having reviewed the relevant documents, the governing law, and the balance of the record, the Court declines to hold an evidentiary hearing, and DENIES the petition for the reasons that follow.

**I.    PROCEDURAL BACKGROUND**

Petitioner is a state prisoner at California Medical Facility ("CMF") in Vacaville, California. (*See* Address Change (Dkt. No. 20).)[1] During the events giving rise to this petition,

---

[1] As Petitioner is now under the custody of Suzan L. Hubbard, Warden of CMF, the Court substitutes Hubbard as respondent. *See* Fed. R. Civ. P. 25(d); *see also Stanley v. Cal. Supreme Court,* 21 F.3d 359, 360 (9th Cir. 1994) (noting that respondent in habeas petition is generally the warden of the facility where petitioner is incarcerated).

ORDER - 1

however, Petitioner was incarcerated at California State Penitentiary, Solano ("Solano"), also located in Vacaville. (*See* Violation Package (Dkt. No. 10-3).)[2] In 2004 at Solano, Petitioner was found "guilty" of "indecent exposure with priors" in a prison disciplinary proceeding. (*Id.*) He was punished with the loss of 90 days of worktime (also referred to as "good-time") credits.[3] (*Id.*) Petitioner now alleges that the procedure used by the prison in withdrawing his good-time credits violated his constitutional right to due process.

After the prison disciplinary hearing, Petitioner appealed, and the matter was reviewed on behalf of the Director of the California Department of Corrections. (Director Decision (Dkt. 10-4 at 2)).) The Chief of the Inmate Appeals Branch, N. Grannis, reduced the rule violation from "indecent exposure with priors," a Division B offense, to "indecent exposure," a Division D offense, and reduced the credit forfeiture from 150 to 90 days. (*Id.*) Grannis rejected Petitioner's complaints regarding the adequacy of the proceedings. (*Id.*) Petitioner then filed for habeas relief in the Superior Court of California; in a written decision, that court denied the petition.[4] (Super. Ct. Order (Dkt. No. 10-5).) Both the California Court of Appeal and the California Supreme Court summarily denied review. (Dkt. Nos. 10-6, 10-7.)[5]

On March 26, 2007, Petitioner, filed this *pro se* habeas petition in the United States District Court for the Eastern District of California. (Pet. 2 (Dkt. No. 1 at 1).) He seeks, *inter alia*, to have the disciplinary sanctions reversed, his lost behavior credits restored, and all references to the discipline expunged from his record. Alternately, he requests an evidentiary hearing. (*Id.* at 11.)

---

[2] As Petitioner's claim is wholly unrelated to his underlying conviction, the Court need not discuss that crime.
[3] Petitioner states that his punishment was the loss of 150, not 90, days of good-time credits. (Pet. at 1 (Dkt. No. 1 at 1).) However, the prison appeal reduced the offense from a level "B" to a level "D" offense and reduced the loss of credits from 150 to 90. (Director Decision (Dkt. No. 10-4).) Petitioner's claim that he had no priors, therefore, is moot.
[4] The superior court based its decision primarily on California's statutory and constitutional remedies for prisoners who allege inadequacy of prison disciplinary proceedings; however, the court also cited prisoner due process cases from the U.S. Supreme Court. (*See* Super. Ct. Order 1–2 (Dkt. No. 10-5 at 2–3).)
[5] Respondents concede that Petitioner has exhausted state remedies, thereby fulfilling the requirement of § 2254(b)(1)(A). (*See* Answer ¶ 5 (Dkt. No. 10 at 2).) Thus, the petition is properly before this Court.

ORDER - 2

## II. APPLICABLE STANDARD

A state prisoner may collaterally attack his detention in federal district court under 28 U.S.C. § 2254 if he is being held in violation of the Constitution or laws and treaties of the United States. 28 U.S.C. § 2254(a). Review of state court decisions, however, is sharply limited. A federal court may not grant a state prisoner's habeas petition unless the state court's adjudication (1) "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court"; or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings." 28 U.S.C. § 2254(d).

Under the first prong of section 2254(d), a state court decision is "contrary to" federal law if the state court applies a rule that contradicts the governing law from Supreme Court precedent or decides the case differently from a Supreme Court case with materially indistinguishable facts. *See Williams v. Taylor,* 529 U.S. 362, 405–06 (2000). A state court decision is an "unreasonable application" of federal law if the state court correctly identifies the governing law but unreasonably applies the rule to the facts of petitioner's case. *See id.* at 413. An unreasonable application means more than that the district court, in its independent judgment, believes that the relevant state court decision applied the law incorrectly or clearly erroneously; rather, the application must be "objectively unreasonable." *Lockyer v. Andrade,* 538 U.S. 63, 75–76 (2003) (citations omitted).

Under the second prong of section 2254(d), to show that the state courts unreasonably determined the facts, the petitioner must overcome a presumption that the state courts correctly determined factual issues. 28 U.S.C. § 2254(d), (e)(1). The petitioner carries the burden of rebutting the presumption of correctness by clear and convincing evidence. *Id.*

An evidentiary hearing may be held when (1) a petitioner alleges facts that, if true, would

ORDER - 3

entitle him to relief, and (2) the petitioner shows that he did not receive a full and fair hearing in state court either at the trial or at the time of the proceeding. *Gonzales v. Plier,* 341 F.3d 897, 903 (9th Cir. 2003). The district court's ability to hold an evidentiary hearing is also limited by statute. If the applicant has failed to develop the factual basis of a claim in state court proceedings, the court may not hold an evidentiary hearing unless (1) the claim relies on a new rule of constitutional law or a factual predicate that could not have been previously discovered through the exercise of due diligence, or (2) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense. 28 U.S.C. § 2254(e)(2).

*Pro se* habeas petitions are to be construed liberally. *Laws v. Lamarque,* 351 F.3d 919, 924 (9th Cir. 2003) (*citing Maleng v. Cook,* 490 U.S. 488, 493 (1989)). The petition and the traverse may be treated as affidavits. *See id.*

**III. DISCUSSION**

Petitioner presents three arguments to support his contention that the prison disciplinary proceeding violated his constitutional right to due process. First, Petitioner argues the prison denied him due process by failing to appoint him an investigative appointee to collect and present information and evidence for an adequate defense. (Pet. 16 (Dkt. No. 1 at 27).) Second, Petitioner argues that the prison denied him due process by excluding certain witnesses to corroborate his statement of defense. (*Id.* at 21.) Third, Petitioner argues that the officer who presided over his disciplinary proceeding was biased, and thus he was denied an impartial hearing in violation of his right to due process. (*Id.* at 26.) Before analyzing each of the three arguments, however, a discussion of the factual background and the legal standard for prison disciplinary proceedings is in order.

**A. Factual Background**

The disciplinary action against Petitioner at issue arose from an incident that occurred in his cell on June 14, 2004, at approximately 8:00 p.m. The prison disciplinary report made findings as follows. The supervising officer in a control booth, Officer J. Weaver, a woman, saw Petitioner naked atop his sink with the cell lights on. (Violation Package 3 (Dkt. No. 10-2 at 2).) He was facing her, looking up at her, and masturbating. (*Id.*) She then called Correctional Officer A. Lamoreaux and Correctional Sergeant S.W. Brown and notified them of the incident. (*Id.*) Lamoreaux, a male officer, responded to Weaver's call. (*Id.* at 4.) He also saw Petitioner facing the control booth and masturbating. (*Id.*) After Petitioner saw Lamoreaux, he stood up and walked to the back of his cell. (*Id.*) Petitioner then stated, "Did you like what you saw? You like watching people jack off." (*Id.*) After Petitioner had stopped masturbating, Brown entered the cell and handcuffed Petitioner. (*Id.*)

Petitioner provides a different version. On that evening, he had just finished a workout in his cell and took a "bird bath" using the sink. (Pet. ¶ 6 (Dkt. No. 1 at 15).) He did so by sitting on the sink so that the water would drain down the sink and not fall onto the floor. (*Id.*) His window was covered. (*Id.* ¶ 7.) While he was bathing, Brown knocked on Petitioner's door and ordered him to uncover his window. (*Id.* ¶ 8.) Although Petitioner explained to Brown that he was bathing and would uncover his window when he finished, Brown threatened to give him "a 115 for disobeying a direct order."[6] (*Id.*) Ultimately, Petitioner relented and opened his window (although he remained naked); soon after, Lamoreaux and Brown accused him of masturbating while looking at Weaver. (*Id.* ¶ 10.) According to Petitioner, he could not even see Weaver because the tower was "at least 30 to 40 yards away, and another 20 yards off the ground" and the tower lights were off. (*Id.*)

---

[6] A "115" appears to be a serious misconduct violation. The disciplinary action taken against Plaintiff is labeled "CDC-115." (Violation Package (Dkt. No. 10-3 at 2–8).)

ORDER - 5

Petitioner was issued documents related to his disciplinary proceedings on June 24, 2004. (Violation Package 2–3 (Dkt. No. 10-3 at 5); Pet. ¶ 11 (Dkt. No. 1 at 18).) According to Petitioner, "the officer who issued the report" told him that he was entitled to an investigative employee to gather information for his defense; such an employee would be provided because Petitioner was in Administrative Segregation. (Pet. ¶ 12 (Dkt. No. 1 at 18).) The rules violation report, however, states that Petitioner was not provided an investigator because "[t]he complexity of the issues does not require further investigation; [t]he housing status makes it likely the subject can collect and present the evidence necessary for an adequate presentation of a defense." (Violation Package 2 (Dkt. No. 10-3 at 4).)

Lieutenant K.J. Meeks presided over the disciplinary hearing, which commenced on July 23, 2004. (*Id.* at 3.) About thirty minutes into the hearing, however, after Petitioner stated that he wished to have Lamoreaux, Brown, and "Lieutenant Sandy" called as witnesses, the hearing was delayed. (*Id.*) Lt. Meeks denied Petitioner's request to call Brown and Sandy because they "had no relevant or additional information." (*Id.* at 3.) Petitioner cross-examined Weaver and Lamoureaux. (*Id.*) After these examinations, Petitioner stated that he objected to having the hearing before Meeks because of his disciplinary complaint against her. (*Id.* at 4.) Meeks issued a decision dated September 9, 2004, finding Petitioner "guilty as charged." (*Id.*)

### B. *Wolff v. McDonnell*: Procedural Due Process Protections for Prisoners

A state-created right to good-time credits,[7] which might enable a prisoner to be released early, is a constitutionally protected liberty interest. *Wolff v. McDonnell,* 418 U.S. 539, 556–57 (1974). Respondents do not contest that the State of California has created such a liberty interest under *Wolff. See also In re Rothwell,* 164 Cal. App. 4th 160, 165 (2008) (noting that, although

---

[7] The removal of good-time credits is also frequently litigated under 42 U.S.C. § 1983; however, the sole remedy for reinstatement of such credits is a habeas petition. *See Preiser v. Rodriguez,* 411 U.S. 475, 500 (1973).

*Wolff* does not create a stand-alone liberty interest in good time credits, the State of California has created such an interest by statute). Thus, Petitioner is entitled to "those minimal procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated." *Wolff,* 418 U.S. at 557.

However, the Supreme Court has also recognized that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant does not apply." *Wolff,* 418 U.S. at 556 (*citing Morrissey v. Brewer,* 408 U.S. 471, 488 (1972)). In *Wolff,* the Supreme Court set forth the protections that are required when a state prison system holds disciplinary proceedings against a prisoner. First, the prisoner must receive advance written notice of the claimed violation. *Id.* at 563. This notice must "be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." *Id.* at 564. In order to fulfill this purpose, the notice must be given no less than 24 hours before a disciplinary hearing. *Id.* Second, the inmate must be able to "call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Id.* at 566. Third, there must be a "written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action." *Id.* at 564–65 (citing *Morrissey,* 408 U.S. at 489). In addition to the *Wolff* procedural requirements, the Supreme Court also requires that the disciplinary findings be supported by "some evidence in the record." *Superintendent, Mass. Corr. Inst., Walpole v. Hill,* 472 U.S. 445, 454 (1985). This minimal standard is met if "there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455–56 (citations omitted).

With this framework, the Court will analyze Petitioner's arguments that the revocation of his good-time credits did not comport with his constitutional right to due process.

ORDER - 7

**C. Analysis**

**1. Failure to Provide Investigative Employee for Disciplinary Proceeding**

Petitioner first argues that his due process rights were violated because the prison failed to provide him with an investigative employee. Respondents concede that Petitioner requested an investigative employee; however, they do not concede that officials had ever promised Petitioner an investigative employee. (*See* Answer ¶¶ 4, 6 (Dkt. No. 10 at 2).)

First, to the extent that Petitioner argues that the Due Process Clause always requires that an investigative employee be provided in the prison discipline setting, his claim is without merit. The Supreme Court has never set forth such an absolute requirement. On the other hand, it has frequently spoken of the need to balance prisoners' constitutional rights with the administrative needs and resources of the prison. *See, e.g., Ponte v. Real,* 471 U.S. 491, 495 (1985); *Wolff,* 418 U.S. at 556. The Court has recognized that an investigative officer may be required when "an illiterate inmate is involved . . . or where the complexity of the issues makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case . . . ." *Wolff,* 418 U.S. at 570. However, as the prison officials found before the hearing, Petitioner is literate, and the hearing involved a simple issue of fact. (Violation Package 2 (Dkt. No. 10-3 at 4).) Thus, the Constitution did not absolutely require the prison to provide Petitioner with an investigative employee.

Second, Petitioner argues that, even if there is no absolute right to an investigative officer, the prison was obligated to provide one for him because his administrative segregation deprived him of the opportunity to find witnesses himself and because the promise to provide an investigative officer prevented Petitioner from preparing his own defense.[8] The parties agree that

---

[8] Petitioner argues in his traverse that even if the federal constitution contains no requirement that an investigative

ORDER - 8

Petitioner requested an administrative officer. (*See* Violation Package (Dkt. No. 10-3 at 8) (indicating that Petitioner checked box, "Investigative employee requested").) However, the parties disagree as to whether such an officer was verbally promised. (*Compare* Pet. 2 ¶ 1B (Dkt. No. 1 at 8) *with* Answer ¶ 6 (Dkt. No. 10 at 2).) What is not disputed is that Petitioner was told that he had not been appointed an investigative employee at his earlier hearing, the hearing was then postponed, and resumed weeks later. Thus, even if such an officer was verbally promised when Petitioner was served with the papers, such a defect was later cured by the continuance. Petitioner had well beyond the minimum of twenty-four hours to compile a defense following the recess.[9] *See Wolff,* 418 U.S. at 564. Thus, even as alleged, Petitioner has failed to establish a constitutional violation.[10]

**2. Exclusion of Witnesses from Disciplinary Hearing**

Petitioner cites the exclusion of two prison officials from his disciplinary proceeding as grounds for granting the petition. Chief among the due process minima articulated in *Wolff* is the right of an inmate to call and present witnesses and documentary evidence in his defense before a disciplinary board. *Ponte v. Real,* 471 U.S. at 495. The right to call witnesses, however, is "subject to the 'mutual accommodation between institutional needs and objectives and the provisions of the Constitution.'" *Id.* (*quoting Wolff,* 418 U.S. at 556). Prison officials may be required to explain, in

---

employee be appointed, California law does, and thus the prison violated his due process rights by refusing to appoint one. (Trav. 8 (Dkt. No. 12 at 8).) This argument, that a violation of constitutional or federal law occurs when the state fails to follow its own proceedings, has been squarely rejected by the Ninth Circuit. *See Walker v. Sumner,* 14 F.3d 1414, 1419–20 (9th Cir. 1994) (*quoting Rogers v. Okin,* 738 F.2d 1, 8 (1st Cir. 1984) ("[I]f state procedures rise above the floor set by the Due Process Clause, a state could fail to follow its own procedures yet still provide sufficient process to survive constitutional scrutiny."), *overruled on other grounds by Sandin v. Connor,* 515 U.S. 472 (1995). Thus, the Court need not address the validity of the claim that California law was violated by failing to provide an investigative employee, as such an action is not required under *Wolff.*

[9] It should also be noted that, as the incident occurred in Petitioner's cell in an isolated area, any witnesses other than the officers were unlikely to be located.

[10] Because Petitioner's version of the facts would not establish a Due Process violation under clearly established principles of constitutional law as interpreted by the Supreme Court, no evidentiary hearing is warranted on this issue. *See Gonzales,* 341 F.3d at 901.

ORDER - 9

a limited manner, the reason why witnesses were not allowed to testify. *Id.* at 497. Prison disciplinary proceedings can exclude witnesses who are irrelevant or duplicative (especially those who lack personal knowledge of the subject matter of the disciplinary proceeding) without running afoul of the Due Process Clause. *See Wolff*, 418 U.S. at 566.

Petitioner and Respondents disagree on whether witnesses Brown and Sandy are "irrelevant," as Respondent argues, or possessed relevant information that could have established Petitioner's innocence, as Petitioner argues. (*Compare* Answer 5 (Dkt. No. 10 at 5), *with* Trav. 12–13 (Dkt. No. 12 at 12–13).) As to Sandy, Petitioner provides no reason as to why Sandy possesses relevant information other than that he was in the building at the time of the incident and he knows the building's configuration; on the other hand, the disciplinary proceeding found that Sandy did not witness the incident and was in a different room when it occurred. (*See* Violation Package (Dkt. No. 10-3 at 5).) Therefore, Sandy's exclusion was not a denial of due process.

Petitioner does explain in greater detail why Brown should have been called to testify. According to Petitioner, Brown ordered Petitioner to uncover his window despite being told he was bathing, and Brown was also aware that Petitioner had part of his window closed and could not see Weaver. (Pet. 3, ¶ 2B (Dkt. No. 1 at 9); Trav. 14 (Dkt. No. 12 at 14).) Petitioner argues that Brown's testimony would have undermined the disciplinary finding that Petitioner was masturbating while looking at Weaver. However, because Brown was not present when Weaver and Lamoreaux viewed Petitioner in his cell, Brown's testimony would have been unlikely to exonerate Petitioner. Even if it were true that Brown forced Petitioner to open his window, that fact would be largely irrelevant to the fairness of Petitioner's hearing. Petitioner stated that he was accused of indecent exposure "five minutes" after Brown allegedly threatened him into opening his cell window. (*See* Trav. 14 (Dkt. No. 12 at 14).) Officers Weaver and Lamoreaux described

ORDER - 10

Petitioner's behavior in some detail in the disciplinary proceeding. (*See* Violation Package 3–4 (Dkt. No. 10-3 at 2–3).) The exclusion of Brown, who did not witness the incident, was reasonable and constitutionally permissible.[11]

### 3. Biased Hearing Officer

Finally, Petitioner argues that the disciplinary proceedings did not comport with due process because he had filed a complaint against Lt. Meeks, who presided over the hearing. Although the due process requirements for a prison disciplinary action are in many ways less demanding than those for criminal prosecution, they are not so lax as to let stand the decision of a biased hearing officer who dishonestly suppresses evidence of innocence. *Edwards v. Basilok,* 520 U.S. 641, 647 (1997). Nevertheless, a petitioner must plead "specific facts supporting his allegation that the hearing officer was biased." *Bostic v. Carlson,* 884 F.2d 1267, 1271 (9th Cir. 1988).

The Court has little difficulty finding that the state tribunals correctly found that the alleged complaint did not render Meeks biased. The Supreme Court has required more than a pending prisoner complaint to constitute bias within this context. In *Basilok,* for example, the hearing officer allegedly *concealed* exculpatory witness statements, and refused to ask relevant questions of witnesses. 520 U.S. at 644. Here, Lt. Meeks did not utilize deceit to arrange a conviction. She gave a clear explanation (provided in the written report) as to why she had not assigned an investigative officer to Petitioner and why she did not allow the testimony of Brown and Sandy. (*See* Violation Package (Dkt. No. 10-3 at 4–5).)

The mere fact that Petitioner had filed a complaint against Meeks does not rise to the level

---

[11] Because Petitioner's version of the facts would not establish a Due Process violation under clearly established principles of constitutional law as interpreted by the Supreme Court, no evidentiary hearing is warranted on this issue. *See Gonzales,* 341 F.3d at 901.

ORDER - 11

of bias in a disciplinary proceeding that the Supreme Court has found to violate Due Process. Indeed, requiring recusal any time that a prison official had been complained about by an inmate could potentially disable the disciplinary process, which is exactly what the Supreme Court cautioned against in *Wolff. See* 418 U.S. at 563 ("[T]here would be great unwisdom in encasing the disciplinary procedures in an inflexible constitutional straitjacket that would necessarily call for adversary proceedings typical of the criminal trial . . . and make more difficult the utilization of the disciplinary process as a tool to advance the rehabilitative goals of the institution."). As the Supreme Court has not set forth this requirement, Meeks' refusal to recuse herself, as well as the superior court's finding that such bias did not make the proceeding unconstitutional, was constitutionally sufficient.[12]

**IV. CONCLUSION**

For the foregoing reasons, the Court hereby DENIES Petitioner's petition for a writ of habeas corpus (Dkt. No. 1), and the Clerk is instructed to close this case.

DATED this 21st day of April, 2009.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

---

[12] No set of facts alleged by Petitioner with respect to the impartiality of Meeks would constitute a constitutional violation; thus, no evidentiary hearing is warranted on this issue. *See Gonzales,* 341 F.3d at 901.

ORDER - 12